# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

NUTRITION PHYSIOLOGY COMPANY, LLC,

        *Plaintiff*,

vs.

JOHN KURTZ,

        *Defendant.*

Case No.11-2353-EFM

## MEMORANDUM AND ORDER

This case arises out of an employee's alleged failure to keep his promise to his former employer. In March 2005, Defendant, John Kurtz, then a Minnesota resident with many years of experience in the livestock industry, began working for Plaintiff's predecessor, Nutrition Physiology Corporation ("NPC Corp."), a corporation that is in the business of marketing frozen microbial feed additives for livestock, as a national sales representative. Around this time, Defendant allegedly signed a Nondisclosure and Noncompetition Agreement, which, among other things, stated that, for a period of three years following his separation from NPC Corp., Defendant "w[ould] not within the geographical limits of the continental United States (areas representing [Defendant's] market territory in which [he] ha[d] customers) . . . engage in or be employed by any microbial feed additive business or business competitive with NPC Corp."[1] Although Defendant does not remember signing it, he has reason to believe that the agreement was signed in Oklahoma, NPC Corp.'s headquarters.

---

[1] Doc. 5-1.

In 2008, Nutrition Physiology Company, LLC ("NPC") purchased substantially all of NPC Corp.'s assets. Sometime thereafter, NPC allegedly presented Defendant with a noncompete agreement, which Defendant refused to sign. Defendant did sign in July 2008, though, an Acknowledgment of Confidentiality and Intellectual Property Rights with NPC, which, among other things, stated that Delaware law governed the agreement, that Defendant would not divulge any of NPC's trade secrets or confidential information, and that the noncompete agreement Defendant entered into with NPC Corp. would be assigned to NPC.

On March 31, 2011, Defendant resigned from NPC, and went to work for Chr. Hansen, a company that also markets microbial feed additives, as a salesman. According to Plaintiff, at his exit interview, Defendant stated that he would not be selling a product line that competes with Plaintiff's. However, Plaintiff has produced evidence indicating that Defendant has indeed been engaging in such a practice. Further, Plaintiff has demonstrated that it informed Chr. Hansen of its noncompete agreement with Defendant shortly after Defendant began his employment with Chr. Hansen. Defendant claims, though, that he has not taken any trade secrets or confidential information to Chr. Hansen. Furthermore, he states that he has returned all of the electronic devices that NPC provided to him.

On June 7, 2011, the District Court of Johnson County, Kansas, issued an ex parte temporary restraining order ("TRO"). On June 23, Defendant removed this case to federal court. On July 6, the Court held a telephone conference with the parties, during which it modified and temporarily extended the state issued TRO. On July 8, the Court held a hearing on the following motions: Defendant's motion to dissolve or modify the state issued TRO (Doc. 4), Plaintiff's motion to extend the temporary restraining order (Doc. 11), and Plaintiff's motion for a preliminary injunction (Doc.

15). At the conclusion of the hearing, the Court issued an oral ruling from the Bench. This Order memorializes that ruling.

In order to receive injunctive relief, a plaintiff must establish: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest.[2] "The purpose of a temporary restraining order or preliminary injunction is to preserve the status quo pending the outcome of the case."[3]

Here, the Court finds that it is likely that Plaintiff will succeed on it's claim that Defendant signed both the 2005 noncompete agreement and the 2008 acknowledgment agreement. However, the Court believes it to be unlikely that Plaintiff will triumph in its quest to have Defendant enjoined from being employed by any business in competition with it within the continental United States. The Court finds it is likely that Plaintiff will succeed on it's claim to restrict Defendant's ability to sell feed additives to some degree. The 2005 agreement limits any selling restriction placed on Defendant to include only those territories in which Plaintiff has customers. However, the agreement does not clearly define territory. Defendant suggests that territory be construed to only limit him from selling his new product to Plaintiff's existing customers; Plaintiff proposes that this term be read to mean that Defendant is precluded from selling competitive products in any state in which it has customers. The Court finds both of these positions to be untenable, as the former is too narrow while the latter is too broad. The Court believes, based on the representations made by the parties thus far and the near-universal maxim that ambiguities in contracts are interpreted against

---

[2] *See, e.g., Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 374 (2008).

[3] *Blackmon v. U.S.D. Sch. Dist.*, 2011 WL 573957, at *7 (D. Kan. Feb. 15, 2011) (internal quotation marks omitted).

the draftsman, that the most reasonable interpretation of the meaning of territory is county. Therefore, the Court concludes that it is likely that Plaintiff will succeed only in preventing Defendant from selling competitive products in the counties where it has customers.

With regard to the question of whether Plaintiff has established that it would suffer irreparable harm if an injunction is not entered at this stage of the litigation, the Court finds that it has. It is well established that it is extremely difficult to quantify the true loss an employer incurs when one of its former salespersons begins selling a competitive product, which appears to be the case here.[4] As a result, the Court concludes that the second element is met.

As for the third, the Court finds that it too has been satisfied. At the hearing, Plaintiff represented that the industry for microbial feed additives is small and that this is the only industry in which it participates. Furthermore, it represented that Defendant has already contacted at least one of its customers attempting to sell Chr. Hansen's non-frozen microbial feed additive, which appears to serve the same purpose as Plaintiff's frozen additive. Based on these representations, and the fact that the injunctive relief that the Court granted to Plaintiff still allows Defendant to sell microbial feed additives to those who are not Plaintiff customers, the Court concludes that the balance of harms favors Plaintiff.

Lastly, the Court concludes that the public interest favors injunctive relief being issued in this case. Here, it appears clear that the parties entered into a noncompete agreement that, at a minimum, validly restricts Defendant from selling a competing product to Plaintiff's existing customers. The Court concludes that the public interest in enforcing such contractual agreements

---

[4] *See, e.g., SizeWise Rentals, Inc. v. Mediq/PRN Life Support Servs.*, 87 F. Supp. 2d 1194, 1200 (D. Kan. 2000).

outweighs its interest in unrestricted competition.[5]  Accordingly, the Court finds that the fourth factor is met.

In sum, at this point in the litigation, the Court concludes that Defendant should be enjoined from selling competitive products in counties where Plaintiff already has customers.  Additionally, the Court finds that Defendant should refrain from disclosing any of Plaintiff's confidential information and trade secrets and should disgorge any such material he possesses.  Further, both parties are ordered to preserve all potentially relevant evidence, including electronic data contained on their computers.  Because the Court finds that there has been no showing of prospective loss to Defendant, Plaintiff need not post a bond.  To the extent Plaintiff seeks relief different than that just stated, its request is denied.

**IT IS THEREFORE ORDERED** that Plaintiff's motion for preliminary injunction (Doc. 15) is hereby DENIED IN PART AND GRANTED IN PART.

**IT IS FURTHER ORDERED** that Plaintiff's motion to extend the state court's TRO (Doc. 11) is hereby DENIED AS MOOT.

**IT IS FURTHER ORDERED** that Defendant's motion to dissolve or modify the state court's TRO (Doc. 4) is hereby DENIED AS MOOT.

**IT IS SO ORDERED**.

Dated this 12th day of July, 2011.

*/s/ Eric F. Melgren*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[5] *See, e.g., id.*